UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:14-cr-00044-MMD-WGC-1 |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| DEVON KAUWE, | |
| Defendant. | |

**I.  SUMMARY**

Defendant Devon Kauwe is currently serving a 65 month sentence (followed by five years of supervised release) on one count of conspiracy to distribute methamphetamine ("meth") at the United States Penitentiary in Lompoc, California ("USP Lompoc"). (ECF No. 529 at 1-2.) Before the Court is his renewed[1] emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic[2] as applied to his health and particular circumstances—including a COVID-19 outbreak at USP Lompoc (the "Motion").[3] (ECF No. 542.) However, because the Court agrees with the government that Defendant has not shown his underlying health conditions place him at increased risk of a severe case of COVID-19—and as further explained below—the Court will deny the Motion.

---

[1] The Court previously denied Defendant's compassionate release motion without prejudice because he did not wait 30 days after requesting compassionate release from the Bureau of Prisons ("BOP") before filing his initial motion. *See U.S. v. Kauwe*, Case No. 3:14-cr-00044-MMD-WGC-1, 2020 WL 2475792 (D. Nev. May 13, 2020).

[2] The Court issues this order during the COVID-19 pandemic, as a novel coronavirus is killing many people around the world, and many governments, including the governments of the United States and Nevada, have at least partially shut down their societies and economies in response. (ECF No. 529 at 14-15.)

[3] The government opposes the Motion. (ECF No. 546.)

## II. BACKGROUND

Defendant sold five ounces of meth to an undercover DEA agent, and was then arrested after arranging to sell seven pounds of meth to the same DEA agent. (ECF No. 534 at 3.) However, he had no prior criminal history and had never been arrested before this arrest. (ECF No. 529 at 2.) He pleaded guilty to one count of conspiracy to distribute meth. (*Id.*) Defendant was on pretrial release for three years without incident before he was sent to USP Lompoc on October 30, 2017. (*Id.*) His projected release date is June 8, 2022. (*Id.*) He is therefore nearly halfway through his custodial sentence. (*Id.* at 1-2.)

Defendant seeks release because his preexisting medical conditions make him particularly vulnerable to COVID-19, and there is an outbreak of COVID-19 at USP-Lompoc, which was locked down to fight the spread of the virus at the time he filed his initial motion. (*Id.* at 1, 6, 17-26.) Specifically, Defendant is overweight and has hypertension. (*Id.* at 15-16.) He is 39 years old. (ECF No. 536 at 2.) The government does not dispute his medical history. (ECF No. 534 at 22.) However, the government argues that "a closer examination of these medical conditions reveal that neither is considered a risk factor for serious complications from COVID-19." (ECF No. 546 at 13.)

The parties also disagree about both the severity of the COVID-19 outbreak at USP Lompoc, and the effectiveness of BOP's efforts to contain and combat the virus. Defendant argued in his initial motion that the COVID-19 outbreak at USP Lompoc was out of control (ECF No. 529 at 19), and now argues in his Motion the outbreak has gotten worse, not better (ECF No. 542 at 2-4). The government counters that, while the correctional complex including USP Lompoc "has suffered a significant number of COVID-19 infections[,]" the BOP has taken significant steps to contain the spread of COVID-19, and case counts have fallen. (ECF No. 546 at 5-10.)

Moreover, the parties dispute whether the 18 U.S.C. § 3553(a) factors and any applicable policy statements from the Sentencing Commission weigh in favor of granting Defendant's Motion. (ECF Nos. 529 at 26-30, 542 at 2, 4, 546 at 16-17.)

## III. LEGAL STANDARD

Defendant specifically seeks release under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. (ECF Nos. 529 at 1-5, 542 at 1.) This provision offers Defendant a limited exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it. *See* 18 U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining that generally a court cannot modify a sentence after it has imposed it). "It allows the sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons' after the defendant has asked the BOP to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request." *United States v. Mogavero*, Case No. 2:15-cr-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Moreover, before granting such a request, the Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that they are applicable,' and any sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citations omitted).

## IV. DISCUSSION

Section 3582(c)(1)(A) implies a three-step process under which the Court must evaluate the Motion. That process begins with the Court determining whether Defendant has satisfied the statutory prerequisites under Section 3582(c)(1)(A). The Court then proceeds to evaluating whether Defendant has shown "extraordinary and compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i), and then finally considers the applicable sentencing factors and policy statements under Section 3553(a). Here, as there is no dispute as to the first step,[4] and the Court is persuaded by the government's argument at the second step, the Court will not address the third step—and instead, focuses its analysis on the second step.

---

[4] As noted *supra* at n.1, the Court denied Defendant's prior motion without prejudice at this first step. *See Kauwe*, 2020 WL 2475792. There is no longer any dispute that Defendant has satisfied the statutory prerequisites. (ECF No. 542 at 2, 546 at 3-4.)

Federal district courts have seen a wave of compassionate release motions similar to the Motion since the COVID-19 pandemic began. For example, as of June 3, 2020, judges in this District have already issued at least 21 decisions on similar motions since the beginning of the COVID-19 pandemic. *See* WESTLAW NEXT, https://next.westlaw.com/ (view citing references of 18 U.S.C. § 3582, filter to view only District of Nevada decisions, then search within for "compassionate release"). As more decisions are published, it appears federal district courts are coalescing on what constitute "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) in the context of the COVID-19 pandemic. In fact, the Court basically agrees with the government that, at this point, the "extraordinary and compelling reasons" prong of the analysis has two components. (ECF No. 546 at 13.) To establish "extraordinary and compelling reasons," the inmate must show "(1) the inmate has a condition or characteristic that is a cognizable basis for compassionate release . . . (*e.g.*, a serious medical condition, debilitating condition, elderly offender with medical conditions, *etc.*) and that condition or characteristic also elevates the inmate's risk of becoming seriously ill from COVID-19, and (2) the inmate is more likely to contract COVID-19 in his or her particular institution than if released." (*Id.*)

While USP Lompoc "has suffered a significant number of COVID-19 infections[,]" (ECF No. 546 at 9), COVID-19 case numbers have fallen substantially. As of June 3, 2020, there are 17 confirmed active cases amongst inmates, and five confirmed active cases amongst staff. *See* BOP, *COVID-19 Coronavirus* (last visited June 3, 2020), https://www.bop.gov/coronavirus/ (by first scrolling over map, then zooming in over Southern California, and then hovering mouse over Lompoc). Regardless, the Court finds the government's argument more persuasive than Defendant's that his proffered underlying medical conditions do not elevate his risk of contracting a serious case of COVID-19.

In his Motion, Defendant incorporates his arguments regarding his health from his initial motion. (ECF No. 542 at 2.) In his initial motion, Defendant, who is 39, argued that the combination of his weight (he is 5'8" and 190 pounds (ECF No. 529 at 16)) and his

hypertension (*id.* at 15-16) means he "faces a heightened risk of serious illness or death from COVID-19" (*id.* at 16). Defendant relied on three sources to support his argument that his weight combined with his hypertension puts him at an elevated risk of contracting a severe case of COVID-19: (1) the "JAMA Article";[5] (2) the "Italy Article;"[6] and (3) the "AHA Guidance."[7] (*Id.* at 15-16.) But the government counters that the JAMA Article and the AHA Guidance qualified their findings such that they do not support Defendant's argument. (ECF No. 546 at 14 n.5 & 6.) And the government appears to be correct, as the JAMA Article notes it does not account for comorbidities (*see supra* n.5), and the AHA Guidance only states that older people are at higher risk of contracting severe cases of COVID-19 if they have hypertension (*see supra* n.7). Further, the Italy Article makes such a general point that it too does not really support Defendant's argument—only explaining that people with one or more underlying illnesses are more likely to develop severe or fatal cases of COVID-19. (*See supra* n.6.)

Moreover, the Court is persuaded by the government's reliance on the current Centers for Disease Control and Prevention ("CDC") guidance. (ECF No. 546 at 13-15.) More specifically, the government refers to the CDC's current guidance on COVID-19 risk for people with hypertension, which says "it is unclear at this time if hypertension is an independent risk factor for severe illness from COVID-19." (*Id.* at 14 n.7.) The government also notes neither hypertension nor being overweight is on the CDC's current list of risk

---

[5]*Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area*, JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION (April 22, 2020), https://jamanetwork.com/journals/jama/fullarticle/2765184?utm_c%20ampaign=articlePDF&utm_medium=articlePDFlink&utm_source=articlePD%20F&utm_content=jama.2020.6775.

[6]Tommaso Ebhardt, Chiara Remondini, and Marco Bertacche, *99% of Those Who Died From Virus Had Other Illness, Italy Says*, BLOOMBERG NEWS (March 18, 2020), https://www.bloomberg.com/news/articles/2020-03-18/99-of-those-who-died-from-virus-had-other-illness-italy-says.

[7]Eduardo Sanchez, M.D., M.P.H., FAAFP, Chief Medical Officer for Prevention, the American Heart Association, *Coronavirus precautions for patients and others facing higher risks*, AMERICAN HEART ASSOCIATION (April 15, 2020), https://www.heart.org/en/coronavirus/coronavirus-covid-19-resources/coronavirus-precautions-for-patients-and-others-facing-higher-risks.

factors. (*Id.* at 15 n.8.) And while being severely obese (BMI > 40) is a risk factor, Defendant's BMI, based on his height of 5'8" and weight of 190 pounds (ECF No. 529 at 16) is well below 40 (ECF No. 546 at 15; *see also id.* at 15 n.9). The government therefore persuasively argues that, based on current CDC guidance, Defendant is not at a particularly high risk of contracting a severe case of COVID-19.

The Court agrees. Defendant has not shown he is at high risk of contracting a severe case of COVID-19 were he to be infected. The Court therefore finds he has not shown "extraordinary and compelling reasons" that weigh in favor of his release under Section 3582(c)(1)(A)(i). For that reason, the Court will deny his Motion, and declines to address the parties' arguments regarding whether the sentencing factors and policy statements weigh in favor of Defendant's release.

## V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's renewed emergency motion for compassionate release (ECF No. 542) is denied.

DATED THIS 3rd day of June 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE